### Application of Jean-Claude Rene Georges BLONDEL et al.
### Patent Appeal No. 9150.

United States Court of Customs and Patent Appeals.
June 27, 1974.

---

Ellsworth H. Mosher, Arlington, Va. (Stevens, Davis, Miller & Mosher), Arlington, Va., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 and 3–6 of application serial No. 717,012, filed March 28, 1968, for "Phenthiazine Derivatives," on the ground of obviousness in view of prior art, under 35 U.S.C. § 103. We reverse.

The issues are whether the claimed invention is prima facie structurally obvious and, if so, whether there has been a sufficient showing of unexpected advantageous properties to overcome prima facie obviousness.

### The Invention

The invention, a new group of chemical compounds, will be understood from the claims on appeal. Claim 1 reads:

1. A phenthiazine derivative of the formula:

1

wherein R represents an alkyl,[2] alkenyl[3] or alkynyl[4] group having 7–17 carbon atoms.

Claim 3 further limits R to specific alkyl, alkenyl, or alkynyl groups. Claims 4–6 are to species within the scope of claims 1 and 3. These derivatives are said to be long-acting neuroleptics, antiemetics and tranquilizers.

### The References

The references relied on are:

| British patent | 904,208 | Aug. 22, 1962 |
| Yale et al. I | 3,194,733 | July 13, 1965 |
| Yale et al. II | 3,350,268 | Oct. 31, 1967 |

The British patent to Rhone-Poulenc S. A., assignee of the present application, discloses phenthiazine derivatives

---

1. The dimethyl sulfamoyl group.

2. Open-chained hydrocarbon radical, $C_nH_{2n+1}$.

3. Open-chained hydrocarbon radical, $C_nH_{2n-1}$.

4. Open-chained hydrocarbon radical containing a triple bond.

having the formula

wherein X is a dimethylsulphamoyl group, as in appellants' compounds; A is, inter alia, a–

$(CH_2)_3$–group; and Z can be a piperidino[5] group having substituted thereon a group of the formula $-C_nH_{2n}OR$, where n is 2 and R is a hydrogen atom or a carboxylic acyl group. These derivatives are disclosed as very active sedatives and antiemetics, in some cases having analgesic activity. Example XIV of the patent discloses the preparation of 3–dimethylsulphamoyl – 10 – [3 – (4 – hydroxymethyl–1–piperidyl) propyl]–phenthiazine, which has the formula:

The Patent Office regards this compound as structurally closest to appellants' claimed compounds. It is the only species of the British patent where X represents dimethylsulphamoyl but this compound differs from appellants' claimed compounds as stated hereinafter.

Yale I, and Yale II which is treated by the Patent Office as cumulative, discloses "phenothiazines" of the general formula:

wherein X can be various organic radicals, including trifluoromethyl, $—CF_3$, Y may be higher alkyl, higher alkenyl, or higher alkynyl, and r is 1 or 2. The terms "higher alkyl," "higher alkenyl" and "higher alkynyl," as employed by

5.

the patentees, include both straight and branched chain radicals of *more than five carbon atoms*. The preferred compounds have 6–14 carbon atoms. Yale I states that:

> The compounds of this invention are therapeutically active substances which are utilizable as tranquilizing (or ataractic) agents. These compounds differ from the corresponding *lower* alkanoic acid ester derivatives or the free hydroxyl derivatives in that they are *significantly longer* acting when administered parenterally and thus, when injected subcutaneously, for example, in a suitable vehicle, yield a long acting tranquilizing drug. [Emphasis ours.]

### The Rejection

The claims stand rejected for obviousness under 35 U.S.C. § 103 on the British patent in view of Yale I and II. The board held that the British patent "encompassed" the claimed compounds in its generic disclosure and that the compound of Example XIV, when taken with the generic disclosure, most closely approaches the claimed invention, the patent making it clear that hydroxymethyl and hydroxyethyl compounds are considered equivalent. The board felt it is clear that the British patent "contemplates all carboxylic acyl esters," while admitting there is no specific teaching of a long chain acyl esterifying group, and that it would be obvious to increase the duration of activity by preparing an ester with a long chain acid in view of the Yale patents, particularly Yale I, which discloses the selection of long chain carboxylic acyl groups to esterify alkylol-substituted phenthiazines related to the British patent and to phenthiazines of the structure claimed. The board said Yale I states that longer lasting activity is produced where longer chain carboxylic acyl esterifying groups are introduced. The board's reason for agreeing with the examiner's holding of obviousness is summed up as follows:

> It is clearly stated that longer lasting activity for the same purpose is pro-

duced where longer chain carboxylic acyl esterifying groups are introduced. It would thus be clearly obvious to the organic chemist to increase the duration of activity in the class of compounds taught in the British patent to select as the generically disclosed carboxylic acyl group a long chain group, thus anticipating [sic] appellants' claimed compounds.

Commenting on the affidavits or declarations, designated Garret I and Garret II, filed by appellants to show advantages in their products in the form of a quantitatively unexpected increase in the *duration* of activity, the board said:

> The declarations, in our opinion, do not demonstrate any unexpected properties in the now claimed compounds. As indicated in Yale et al., longer activity is to be expected in longer chain esters. The declarations demonstrate little more than that. The reference compounds and the herein claimed compounds appear to be useful for substantially the same purposes, and the comparative showing of somewhat longer activity in a single area of a community of pharmaceutical activities does not persuade us of unobviousness of the selected members of the class depicted in the British patent for the same utility.

### Appellants' Position

Appellants' position is, first, that the invention is not structurally obvious since the British patent disclosure, although perhaps generic to the invention, does not specifically *teach* appellants' subgenus and there is no reason why one skilled in the art would select that subgenus from the at least 384 genera encompassed within the broad general formula of the British patent. Appellants agree that the closest disclosure of the British patent is Example XIV, but point out that this compound differs from the claimed compounds in that it is an alcohol, not an ester, and that it is not the alcohol from which the claimed ester subgenus is derived since the alcoholic hydroxy group is joined to the pi-

peridino ring through a methylene group, $-CH_2-$, not an ethylene group, $-CH_2 \cdot CH_2-$. Appellants further out that Yale's structural formula differs from appellants' subgenus in that Yale does not disclose that the substituent X may be dimethyl sulphamoyl [6] and the heterocyclic ring joining the ester group to the phenthiazine nucleus is a piperazine ring [7] in Yale, not a piperidine ring [8] as in the compounds of the invention.

Assuming, arguendo, that the claimed compounds are structurally obvious in view of the British patent, in case that point is ruled against them, appellants contend that this would not compel a finding of obviousness under § 103 if they have shown unexpected advantageous properties in their new compounds. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963). They say this is so even though the utility of their compounds is in the same field as the utility of the prior art compounds if their compounds are substantially greater in effectiveness. In re Lohr, 317 F.2d 388, 50 CCPA 1274 (1963); In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967); In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967). They further contend that even though Yale may suggest that *duration* of activity of the compounds of the British patent may be extended by forming esters thereof with higher rather than lower acids, whereby the number of carbon atoms in the R group is increased, their compounds are nevertheless unobvious and patentable if their proofs show, as they contend they do, that the *increase* in duration of activity is *greater* than those skilled in the art would have any reason to expect.

## OPINION

On the entire record, we agree with appellants that they have established unobviousness of their claimed compounds over the disclosures of the references.

The key consideration on the question of unobviousness is the duration of the activity of the invention compounds in certain tests which were performed on them as antiemetics administered to dogs (anti-apomorphine activity). Garret I, the first affidavit evidence submitted by appellants, established the superior duration of the activity of the invention compounds, in which the R substituent contains from 7 to 17 carbon atoms, relative to a Yale compound named "fluphenazine enanthate," an ester wherein the R group contains 6 carbon atoms. These tests were made on 14 of appellants' compounds. They showed all of the compounds tested to be superior in duration of activity to fluphenazine enanthate but were not accepted by the examiner as showing unobviousness and were criticized by him as not showing that the prolongation of activity was other than would have been expected from Yale's disclosure, and as not having compared the closest prior art, namely, the sulfamoyl compound of British patent Example XIV (an alcohol) and its esters.

Appellants responded by submitting a second affidavit, Garret II, reporting on comparative tests on certain compounds, designated I, II, III, and IV, in which they undertook to show what one skilled in the art would expect from a knowledge of the references and that the in-

---

6. See note 1, supra.

7.

8. See note 5, supra.

vention compounds exceed that expectation. Compound I was fluphenazine enanthate, one of Yale's preferred compounds, which has the formula

It will be noted that what corresponds to R in appellants' claimed compounds, limited to those in which R contains 7–17 carbon atoms, contains 6 carbon atoms, i.e., the $-C_6H_{13}$ group. Garret II is first concerned with showing what increasing the number of those carbon atoms would be expected to do by way of prolonging the effectiveness of the drug as an antiemetic.

Compound II was fluphenazine decanoate, the same as compound I except that R is $-C_9H_{19}$. This too is one of the compounds disclosed by Yale, who suggests that R (or Y, as he designates it) should have from 6 to 14 carbon atoms, preferably 9 to 14. Appellants' tests on compounds I and II of Yale's series of trifluoromethyl ($-CF_3$) compounds led the declarant Garret to conclude that the duration of activity of compounds I and II is of a similar order and not significantly affected by the number of carbon atoms in the R residue, that is by the increase from $C_6$ to $C_9$ in R.

Next, to meet the objection that appellants had not compared their compounds to the closest prior art, deemed to be British patent Example XIV and its esters, Garret tested compound III which was the heptanoic acid ester of British Example XIV, the R portion of which contains 6 carbon atoms. This compound had a duration of activity very similar to compounds I and II. Of the three, compound II ($C_9$ in R) was somewhat better than the other two, but not significantly so.

Compound IV tested by Garret is a compound of the invention, corresponding to the formula of claim 1, wherein R is $-C_9H_{19}$, and which contains the dimethyl sulfamoyl group as did compound III. The results of the tests of the four compounds, given in both tabular and graph form in the affidavit, show that compound IV had a prolongation of activity very much greater than one would have expected on the basis of knowledge of the effect of increasing the number of carbon atoms in the R group of the Yale compounds I and II from 6 to 9. The increase in the prolongation of activity in appellants' series of compounds, in going from 6 to 9 carbons in the R group, is, according to their calculations, unchallenged by the Patent Office, about 150% in excess *of the reasonable expectation.*

The board was nevertheless critical of appellants' tests, saying:

The declaration does not compare Compound III, representative of the British patent, with an ester containing an R group *of 7 carbon atoms* each included in claims 1 and 3, but compares a longer chain ester having 9 carbon atoms in the R grouping. This comparison, in our opinion, is insufficient since it does not compare the *shortest* chain compound now *claimed* with a representative reference compound. We have no reason to believe that a 7–carbon R group compound exhibits more than the expected increase in activity over the 6–carbon

R group compound * * *. [Emphasis ours.]

It is with respect to this objection that appellants assert that the information the board found lacking is in fact available by an indirect comparison of data of record. They state this argument in summary fashion as follows:

> In Garret I the $C_7$ compound is shown to have a duration of activity considerably in excess of fluphenazine enanthate. In Garret II the $C_6$ compound [compound III] is shown to have substantially the same duration of activity as fluphenazine enanthate [compound I]. Since Garret II describes tests carried out under substantially identical conditions to those of Garret I, it is possible to get a reliable indication of the duration of activity of the $C_7$ compound and of the other invention compounds described in Garret I compared to the $C_6$ compound indirectly by comparing the duration of activity of each of the compounds under consideration with fluphenazine enanthate.

We have heretofore approved such indirect comparison in In re Fouche, 439 F.2d 1237, 58 CCPA 1086, (1971), upon which appellants rely. We note that the solicitor has not challenged our holding in *Fouche* or attempted to answer appellants' arguments based thereon but has merely asserted that appellants should have made a direct comparison. Appellants' brief goes through a detailed, step-by-step analysis of the evidence in support of the conclusion to be drawn from the indirect comparison, which we will not undertake to repeat. Suffice it to say that we find it persuasive that the claimed compounds possess a duration of activity that is greater than would be reasonably expected by one skilled in this art from a knowledge of the performance of the prior art compounds.

We find nothing of record to indicate that workers in this field recognize the kind of predictability which the Patent Office seems to have taken for granted. On the contrary, we note the introductory statement in the British patent says:

> It has * * * been demonstrated that of the very large number of possible N–substituted phenthiazine compounds that have been proposed or tested by various workers, only comparatively few types have useful application in human or veterinary medicine and that both the nature and the degree of useful effect can radically alter even with apparently small changes in chemical structure.

We also note that Yale was not speaking, when commenting on the effect of the use of higher rather than lower acid ester derivatives, of phenthiazines in general or of the phenthiazines of the British patent (which are inclusive of appellants' compounds) but of "The compounds of this invention," meaning his own group, which have several "small changes in chemical structure" from appellants' compounds, as pointed out above. The evidence shows that with the latter the effect of increasing the number of carbon atoms in the R group is quantitatively quite different from the effect of increasing the number of carbon atoms in the corresponding group in the Yale series of compounds. We feel that appellants' disclosures contribute something unobvious to the knowledge in this art and that their claims are commensurate with that contribution. We therefore reverse the rejection under § 103.

This conclusion with respect to the showing of a prolongation of the duration of activity beyond what could reasonably be expected by the man of ordinary skill in the art makes it unnecessary for us to pass on the issue of whether appellants' claimed compounds are structurally obvious since, even if they are, the prima facie case which that would make for the Patent Office

has been overcome by the evidence introduced by appellants. In re Papesch, supra.

The decision of the board is *reversed*.

Reversed.