NEWMAN, Circuit Judge,
with whom LOURIE and REYNA, Circuit Judges, join, dissenting from the denial of the petition for rehearing en banc.
This appeal concerns a patent owned by Bristol-Myers Squibb Company on the product entecavir, a medicinal product for treatment of hepatitis B. Litigation arose under the provisions of the Hatch-Wax-man Act, upon the filing by Teva Pharmaceuticals USA of an Abbreviated New Drug Application Paragraph IV Certification. A panel of this court held the patent invalid,[1] creating several new standards for determination of obviousness. For example, the court deemed it irrelevant to the obviousness determination that the prior art “lead compound,” the carbocyclic analog of 2'-deoxyguanosine (2'-CDG), is *1347 highly toxic to humans, whereas the new product entecavir is non-toxic. Bristol-Myers requests rehearing en banc, arguing that the court has misapplied statute and precedent.
This case has aroused extensive commentary, particularly in the chemical and pharmaceutical fields; the request for rehearing en banc is supported by much of the nation’s research-based industry, which has filed briefs as amici curiae to point out the disincentives and uncertainties flowing from the court’s rulings. As summarized by amicus Intellectual Property Owners Association:
This decision introduces substantial uncertainty into what appeared to be a clear legal standard; allowing this uncertainty to fester would affect countless pending and future cases. Obviousness is an issue in most patent examinations, litigations, and administrative proceedings. Particularly in unpredictable chemical and pharmaceutical fields, unexpected results evidencing differences and objective considerations can tip the balance between obviousness and non-obviousness. Patent owners would benefit from the certainty of an en banc ruling on when and how later-discovered differences between an invention and prior art may be considered in the obviousness analysis.
Brief of Amicus Curiae Intellectual Property Owners Association in Support of Rehearing En Banc at 6-7.
I outline the several conflicts with precedent here produced; for until this case, inventors could confidently establish pat-entability of a new product or a new use by showing that the new property or use was unexpected in light of the prior art.

1. Restriction on comparative data showing unexpected properties

The court held that entecavir’s unexpected properties did not render it nonob-vious in patent terms because “additional unexpected properties, however, did not upset an already established motivation to modify a prior art compound based on the expected properties of the resulting compound.” Bristol-Myers, 752 F.3d at 976. The court’s hindsight decision that Bristol-Myers merely “ma[de] the minor modification to arrive at entecavir,” id. at 973, while ignoring the unexpected differences in properties between entecavir and the prior art compound, conflicts with the entirety of precedent on the law of obviousness.
When a new product' (or device or method) is discovered, its nonobviousness in patent terms often is demonstrated by evidence of whether the new product (or device or method) possesses properties not possessed by similar products. The mechanism for providing this evidence is the submission of comparative data in affidavits or declarations filed pursuant to USP-TO Rule 132, 37 C.F.R. § 1.132. Such data may involve new experiments performed on the invention and the prior art for purposes of comparison, and information already known although not in comparative form. See, e.g., In re Chupp, 816 F.2d 643, 644 (Fed.Cir.1987) (“To rebut the pri-ma facie case of obviousness, Chupp submitted a declaration discussing the results of tests comparing the herbicidal activity of the claimed compound with that of the closest prior art compounds and with two commercial herbicides.... It is undisputed that the claimed compound gave superior results-”); In re Payne, 606 F.2d 303, 306, 316 (CCPA 1979) (in response to an obviousness rejection based on prior art, the inventor provided data that “purportedly establishes an unexpectedly superior scope and level of pesticidal activity of the claimed compounds in a comparison of the most representative compound of’ the prior art).
*1348 Such comparative data need not have been previously available or known to the art at the time of the invention. In In re Miller, 39 CCPA 979, 197 F.2d 340, 342 (1952), the court called for the “making of comparative tests” if needed to support unexpected results. This is established practice. See, e.g., In re Orfeo, 58 CCPA 1123, 440 F.2d 439, 441 (1971) (applicants “have the right to have considered the Rule 132 affidavit which allegedly shows new and unexpected results”); In re Khelghatian, 53 CCPA 1441, 364 F.2d 870, 872 (1966):
There appears to be agreement of the parties that essential to the proper resolution of this issue is a consideration of all the record evidence, including an affidavit filed under Rule 132. Such has been the law in this court for several years, and that regardless of whether any “doubt” as to patentability exists upon an examination of the prior art alone.
Precedent is clear that the information and comparative data presented as evidence of nonobviousness need not have existed before the patent application was filed. See, e.g., Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc., 655 F.3d 1291, 1307 (Fed.Cir.2011):
[I]t would be error to prohibit a patent applicant or patentee from presenting relevant indicia of nonobviousness, whether or not this evidence was available or expressly contemplated at the filing of the patent application.
See also Knoll Pharm. Co., Inc. v. Teva Pharm. USA, Inc., 367 F.3d 1381, 1385 (Fed.Cir.2004):
There is no requirement that an invention’s properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention, in order for that work to be introduced into evidence in response to litigation attack. Nor is it improper to conduct additional experiments and provide later-obtained data-in support of patent validity.
Information learned after the patent application was filed may provide evidence of unexpected or unpredicted properties. E.g., In re Zenitz, 52 CCPA 746, 333 F.2d 924, 925, 927 (1964) (later discovered hypo-tensive and tranquilizing properties that were not described in the specification could render the claimed compounds non-obvious and thus patentable); Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA 748 F.3d 1354, 1360 (Fed.Cir.2014):
Glenmark also argues that later-discovered benefits cannot be considered in an obviousness analysis, here referring to the improved kidney and blood vessel function that were observed after the patent application was filed. That is incorrect; patentability may consider all of the characteristics possessed by the claimed invention, whenever those characteristics become manifest.
Comparisons of newly found properties of both the invention and the prior art are routinely presented as evidence in determinations of obviousness. In Leo Pharmaceutical Products, Ltd. v. Rea, 726 F.3d 1346 (Fed.Cir.2013), the patentee during reexamination conducted tests of the prior art and showed that the reference formulations resulted in significant degradation of the vitamin D analog and corticosteroid. In considering this post-invention testing of the prior art, this court stated “[t]hese test results are a strong indication that the '013 patent’s combination of known elements yields more than just predictable results,” and reversed the Board’s obviousness determination. Id. at 1358.
The provision of comparative data, whether or not the data were available *1349 before the patent application was filed, is long-established practice. See In re Payne, 606 F.2d at 815-16 (“A prima facie case of obviousness based on structural similarity is rebuttable by proof that the claimed compounds possess unexpectedly advantageous or superior properties. Direct or indirect comparative testing between the claimed compounds and the closest prior art may be necessary.” (citing In re Papesch, 50 CCPA 1084, 315 F.2d 381, 386-87 (1963))); In re Merchant, 575 F.2d 865, 869 (CCPA 1978) (“An applicant relying upon a comparative showing to rebut a prima facie case must compare his claimed invention with the closest prior art.”); In re Miller, 39 CCPA 979, 197 F.2d 340, 342 (1952) (“Where, as here, results superior to those produced by the references of the prior art, or public knowledge and use, constitute the basis for the claim of invention, the making of comparative tests and the establishment of the unexpected and superior results never before attained must be established by a proper showing”).
Despite this overwhelming precedent, the court declined to weigh that the designated .lead compound 2'-CDG is highly toxic and concededly is useless in treating hepatitis B. Such information cannot be ignored, although it was not observed until the prior art compound was tested in mammals, after the entecavir patent application was filed. This does not render this unexpected difference irrelevant to patent-ability, as a matter of law or logic. In In re Papesch the court explained:
From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing.... [T]he thing that is patented is not the formula but the compound identified by it. And the patentability of the thing does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter. There is no basis in law for ignoring any property in making such a comparison.
315 F.2d at 391.
Our colleagues in concurrence disregard the entirety of precedent and practice. The amici curiae protest the court’s changes of law and understanding as confusing, unnecessary, and contrary to the public interest in development of useful and beneficial new products. Amicus curiae the Biotechnology Industry Organization reminds the court of the new statutory pressures for early filing, now that the patent goes'to the first inventor to file, not the first to invent:
The AIA’s new first-to-file system puts pressure on companies to file early, lest they lose priority. But, under the panel’s approach, innovators might be better off waiting, in case new, unexpected differences between the invention and prior art come to light during clinical testing. There is no reason to put innovators to that difficult choice.
Brief of Amicus Curiae Biotechnology Industry Organization in Support of Rehearing En Banc at 7.
If there is now to be a major restriction on the evidence that can be adduced in support of patentability of new and improved products, such change of law should be determined en banc.
2. The misapplication of “secondary considerations ”
Information about the “secondary considerations” of nonobviousness, see Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), is often based on post-filing knowledge and data. Such information includes “commercial success, long felt but unsolved needs, failure of others, etc.,” id. at 17, 86 S.Ct. 684, and tends to become manifest after the *1350 patent application is filed and the invention is used. “Evidence of secondary considerations may often be the most probative and cogent evidence in the record.” Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed.Cir.1983).
Emphasizing the characteristics of medicinal and biological products, amicus curiae Pharmaceutical Research and Manufacturers of America observes that the objective indicia of nonobviousness do not come into existence until after the patent application was filed. If there is now to be some restriction on reliance on such information, it should be clearly stated and contrary precedent should be overruled.
3. The holding that an unexpected property is insufficient “by itself ’ to show nonobviousness
The court stated that “unexpected results do not per se defeat, or prevent, the finding that a modification to a lead compound will yield expected, beneficial properties.” Bristol-Myers, 152 F.3d at 976. The court further stated that “an unexpected result or property does not by itself support a finding of nonobviousness.” Id. To the contrary, an unexpected result or property is the touchstone of nonobviousness.
Although the court recognized that ente-cará" has the “unexpected properties [of]: (1) high potency against hepatitis B, (2) a larger than expected therapeutic window, and (3) a high genetic barrier to resistance,” id. at 977, the court held that these unexpected properties were expected because the prior art had these properties to some failed extent. The court postulated that entecavir’s non-toxicity was “not unexpected in light of the structurally similar 2'-CDG,” id. at 978, although the toxicity of 2'-CDG was so high that it was abandoned as a potential treatment for hepatitis B.
Precedent directly contradicts the court’s position. An unexpected property “by itself’ can, indeed, support a finding of nonobviousness. This court stated in In re Soni:
One way for a patent applicant to rebut a prima facie case of obviousness is to make a showing of “unexpected results,” i.e., to show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected'. The basic principle behind this rule is straightforward — that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious.... [W]hen an applicant demonstrates substantially improved results, as Soni did here, and states that the results were unexpected, this should suffice to establish unexpected results in the absence of evidence to the contrary.
54 F.3d 746, 750-51 (Fed.Cir.1995).
This principle is—or was—beyond dispute, as illustrated on a vast variety of facts. See, e.g., Procter & Gamble Co. v. Teva Pharm. USA Inc., 566 F.3d 989, 994 (Fed.Cir.2009) (“If a patent challenger makes a prima facie showing of obviousness, the owner may rebut based on ‘unexpected results’ by demonstrating ‘that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.’ ” (quoting In re Soni, 54 F.3d at 750)); Kao Corp. v. Unilever U.S., Inc., 441 F.3d 963, 969-70 (Fed.Cir.2006) (affirming nonobvi-ousness over prima facie case based solely on evidence of unexpected results); In re Geisler, 116 F.3d 1465, 1469 (Fed.Cir.1997) (observing that “a prima facie case of obviousness can be rebutted if the applicant (1) *1351 can establish ‘the existence of unexpected properties in the range claimed’' or (2) can show ‘that the art in any material respect taught awa/ from the claimed invention.” (quoting In re Malagari, 499 F.2d 1297, 1803 (CCPA 1974))); In re Corkill, 771 F.2d 1496, 1501 (Fed.Cir.1985) (“A greater than expected result is an evidentiary factor pertinent to the legal conclusion of the obviousness vel non of the claims at issue.” (citing United States v. Adams, 383 U.S. 39, 51-52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966))); In re De Blauwe, 736 F.2d 699, 706 n. 8 (Fed.Cir.1984) (“A proper showing of unexpected results will rebut a prima facie case of obviousness.” (citing In re Fenn, 639 F.2d 762 (CCPA 1981); In re Murch, 59 CCPA 1277, 464 F.2d 1051 (1972))); In re Klosak, 59 CCPA 862, 455 F.2d 1077, 1080 (1972) (“The fact that an invention provides results which would not have been expected by those skilled in the art is strong evidence in rebuttal of an assertion that the invention would have been obvious.”).
The court’s apparent departure from this principle, and its holding that not all properties need be considered in determining obviousness, is a primary focus of the concerns stated by the amici curiae. Ami-cus curiae Bay Area Bioscience Association writes that:
For many newly discovered pharmaceuticals, their truly innovative and lifesaving properties are often not discovered until well-controlled clinical trials or even post-marketing studies have been conducted — events that occur well after the filing date of the patent-in-suit. Indeed, this is particularly so in the area of personalized medicine, where novel therapeutic treatments are tailored to a particular patient’s genetic makeup.
Brief of Amicus Curiae Bay Area Bioscience Association in Support of Rehearing En Banc at 7. Again, if the law is to be changed and precedent discarded, en banc attention is required, rather than discordant conflict with precedent.
4. The court’s oversimplified distinction between “difference in degree” and “difference in kind ”
The court held that a “mere difference in degree” is “insufficient” to render a compound patentable. 752 F.3d at 977. The flaw in this generalization is apparent from its application here, where the court held that a new and effective non-toxic treatment for hepatitis B is merely a difference in degree from a highly toxic and useless treatment for hepatitis B.
Precedent has placed the usage “difference in degree” in a more useful context:
Whether the difference between the claimed invention and the prior art is a difference “in kind” or a difference “in degree” is not mentioned in section 103. Section 103 simply requires a determination as to whether the invention as a whole would have been obvious to one of ordinary skill in the art at the time of appellant’s invention. An unexpected increase in physiological activity may be persuasive evidence of unobviousness.
In re Wagner, 54 CCPA 1031, 371 F.2d 877, 885 (1967) (citing In re Grier, 52 CCPA 1081, 342 F.2d 120 (1965)); see also In re Chupp, 816 F.2d at 644, 646-47 (“selectivity factors (crop safety combined with weed-killing activity) at least five times greater than those of closest prior art compounds” were sufficient evidence of unexpected difference in properties to rebut prima facie case of obviousness); In re Wiechert, 54 CCPA 957, 370 F.2d 927, 932 (1967) (“Appellant contends that obviousness of a novel compound is to be decided not only from a comparison of its structural formula with that of the prior art compound, but from all properties of the compounds.... We think appellant’s *1352 contentions have merit.... As we indicated in In re Lohr, 50 CCPA 1274, 317 F.2d 388 (1963), it is possible to obtain a patent where the showing proves substantially greater effectiveness.... In the case at bar, we are impressed by the 7-fold improvement in activity and, in the absence of valid countervailing evidence, we find the claimed compounds to be unobvious.”).
The stage at which an obvious difference in degree becomes an unobvious difference in kind is based on the particular subject matter. On the undisputed facts herein, the prior art compound 2'-CDG was found to be toxic to mammals, whereas entecavir is non-toxic to mammals. This cannot be reasonably viewed as a “mere difference in degree.”
All of the amici curiae expressed concern about the negative impact on development of new and improved products flowing from the court’s fresh uncertainty on the availability of reliable patent rights. No policy reason has been offered by the court, for its further restrictions on access to patenting. From my colleagues’ refusal to review this ruling en banc, I respectfully dissent.

. Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc., 752 F.3d 967 (Fed.Cir.2014).