**Application of James F. NOLAN.**

**Patent Appeal No. 76–672.**

United States Court of Customs and Patent Appeals.

May 5, 1977.

As Amended on Denial of Rehearing June 16, 1977.

**1262**

Jim Zegeer, Arlington, Va., atty. of record, for appellant, Donald Keith Wedding, Toledo, Ohio, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Dennis L. Albrecht, Arlington, Va., for the Patent and Trademark Office.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and KASHIWA, Associate Judge, United States Court of Claims.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board) affirming the rejection under 35 USC 103 of claims 1 through 9, all of the claims in application serial No. 396,337, filed September 11, 1973, for "Multiple Gas Discharge Display/Memory Panel and Method of Operating." We affirm.

### The Invention

The invention is an improvement in a gaseous discharge display/memory device having an electrical memory and the capability of producing a visual display and the method of operating same. The improvement resides in the specific ionizable gaseous medium (*i. e.*, "99.5 to 99.99 percent atoms of neon and about .5 to .01 percent atoms of at least one minority rare gas selected from argon, krypton, and xenon") used in the device.

The device is exemplified by Figures 3 and 4 of appellant's drawings: [1]

---

1. Reference characters identifying elements not referred to in the discussion have been deleted. The drawings also appear in this court's opinion in *In re Bode*, 550 F.2d 656, 193 USPQ 12 (Cust. & Pat.App.1977), which involved claims to structure of gaseous display/memory devices.

The device comprises a layer of ionizable gas (12) sandwiched between a pair of dielectric layers (10, 11), with each dielectric layer backed by a conductor array (13, 14). The conductor elements (13′-1—13′-C) of one of the arrays extend in a different direction from that of the elements (14′-1—14′-H) of the other array, so that imaginary projections (onto an imaginary plane parallel to the two conductor arrays) of the elements of one array intersect with such projections of the elements of the other

array. Each space between the dielectric surfaces that corresponds to each such intersection constitutes a display cell (30), with the portions of the dielectric surfaces that correspond to each such intersection forming opposed pairs of charge storage areas.

In operation, when a sufficient initial (ignition) alternating potential is applied to specific conductor elements, such as 13'–1 and 14'–1, the voltage across the corresponding display cell (30) causes the gas contained in this cell to break down into a plasma (i. e., the gas discharges), and the electrons and ions flow toward the corresponding conductors. This activity produces light, and, thereby, a visual display. Also, the electrons and ions flow to a position adjacent the respective dielectric layers and are stored there, thus forming an electrical memory. Due to this memory, the gas will discharge during later operating (sustaining) cycles of an alternating potential at a lower voltage than that required for the initial (ignition) gas discharge.

Appellant states in his specification that "the utilization of rare gas mixtures of the specific concentrations defined herein, results in decreased operating voltages and currents, increased memory margins,[2] and increased luminous efficiency.[3]"

Claims 5 and 6, respectively, are illustrative of the device and method:

5. In a multiple gaseous discharge display/memory device of the type comprising an ionizable gaseous medium in a gas chamber formed by a pair of opposed dielectric charge storage members, each dielectric member having one surface in direct contact with the gaseous medium, the opposite non-gas contacting surface of each dielectric member being backed

by an array of electrodes, the electrodes of one array being appropriately oriented with respect to the electrodes of the other array so as to define a multiplicity of discharge sites within the gaseous medium, the improvement wherein the gaseous medium comprises about 99.5 to 99.99 percent atoms of neon and about .5 to .01 percent atoms of at least one minority rare gas selected from argon, krypton, and xenon.

6. In the process of operating a multiple gaseous discharge display/memory device comprised of an ionizable gaseous medium, at least one dielectric charge storage member, and a multiplicity of electrodes, and wherein the gaseous medium is selectively ionized by operating voltages selectively applied to the electrodes, the improvement which comprises significantly enhancing the operating performance of the device as measured by the Figure of Merit[4] by the utilizing of a rare gas mixture comprised of about 99.5 to 99.99 percent atoms of neon and about .5 to .01 percent atoms of at least one minority rare gas selected from argon, krypton, and xenon.

### The References

The pertinent references relied on by the board are:

Baker et al. (Baker)  3,449,167  March 3, 1970
Bitzer et al. (Bitzer)  3,559,190  January 26, 1971
Morawski, *Experimentelle Untersuchungen Über Zund- und Brennspannungen Bei Neon-Argon-Gemischen Unter Berücksichtigung der Forderungen Bei der Entwicklung von Kaltkatoden-Entladungsröhren*, 10 Experimentelle Technik Der Physik, No. 5, 355–62 (1962).

Baker discloses a gas discharge display/memory device which appellant concedes has the same structure as his claimed device except for the ionizable gas. Baker also discloses that the "basic electrical phe-

2. Memory margin $= \dfrac{V_f - V_E}{V_f/2}$, where $V_f$ is the minimum voltage required to initially discharge the gas volume and $V_E$ is the minimum voltage sufficient to sustain discharges once initiated.

3. Luminous efficiency is the ratio of the brightness of the light emitted by the display panel to the electrical power input to the panel.

4. Figure of merit $= \dfrac{(M.M.M.)\,(e)}{(I)\,(V)}$, where M.M.M. is the % mean memory margin, e is the luminous efficiency, I is the peak current, and V is the minimum sustaining voltage.

nomena [sic, phenomenon] utilized in this invention is the generation of charges (ions and electrons) alternately storable at pairs of opposed . . . discrete points" and that the gas must produce light and a large supply of charges.

Bitzer discloses a gaseous discharge display/memory device in which a suitable gas is placed intermediate to and electrically insulated from a pair of arrays of conductors. With respect to gases which can be utilized, Bitzer teaches—

It appears desirable for proper operation of the discharge cell that a suitable gas mixture is utilized such that an intense discharge is produced which causes a rapid flow of charges to the walls. In our investigations we have found that when neon alone is placed in the gas cell and excited with the sine wave shaped pulses . . . a discharge is produced which lasts for almost the entire half cycle and that the amount of memory is very small. It is possible that neon alone can be made to function in accordance with the principles of this invention relating to the formation of wall charges and the resulting pulse type discharge, if the neon is excited under suitable conditions and with proper excitation or drive signals following the teachings herein. . . [W]e have also investigated the use of nitrogen alone and we have found that a discharge is produced and the cell walls become charged. The discharge, however, does not produce enough light for normal display purposes. . . . [A]ny gas or gas mixture which produces a sufficient discharge such as to cause a rapid flow of charges to the cell walls is capable of performing according to the teachings of the present invention to impart information.

and

We have determined that a minicell constructed according to the principles of this invention can operate in a pulsing discharge manner using a mixture of neon and approximately 2–10% nitrogen maintained at a pressure between 315 and 740 millimeters of mercury. . . .

It will be appreciated that the above parameters are given only as examples, since many of the benefits of a gas cell with wall charges operating in a pulsing discharge manner can be obtained with various other gases or gas mixtures at other pressure levels. Other gases and pressure ranges which will form wall charges under suitable conditions in accordance with the teachings herein can be readily obtained by those skilled in the art.

Morawski discloses the influence of the Penning effect on ignition and operating (sustaining) voltages of neon-argon mixtures having neon as the carrier gas. The Penning effect is well described in the Examiner's Answer:

The Penning Effect occurs when a minor amount of a suitable gas is added to a gas such as neon, which has a so-called metastable excited state. This means that the neon can absorb energy (16.5 electron-volts) and thereby be excited to a state from which the neon does not readily decay; this state, however, is not ionized, and thus does not produce charged particles to conduct current through the gas. If, however, a small amount of another gas is added to the neon, and the other gas has an energy required for ionization which is less than the energy available in the metastable state of the excited neon, then the excited neon can transfer its energy to the other gas, ionizing the other gas and producing charged particles which cause the gas to conduct.

Morawski teaches that due to the Penning effect the ignition and operating (sustaining) voltages are decreased when argon is added to the neon, with the minimum voltages occurring when there is between .1% and .5% argon, and that the decrease in voltage progresses with the "decreasing difference between the potential of the metastable state of the carrier gas [i. e., neon] and that of the added gas [argon]." Appellant concedes that Morawski discloses a specific gas mixture (99.9% neon and .1% ar-

gon) within the scope of the mixtures recited in the claims.

### Proceedings Below

The examiner rejected all claims on appeal under 35 USC 103 as obvious from Baker in view of Bitzer and Morawski. He noted that Baker shows the panel structure and that Bitzer discloses that neon-nitrogen gas mixtures as well as other gas mixtures can be used in gaseous display/memory devices. He concluded that "use of Morawski's neon-argon (about 0.1% argon) which, from Morawski's teachings will be more efficient and will have lower voltage requirements that [sic, than] neon-nitrogen . . . would be obvious in the Baker et al panel, to obtain the improved efficiency and lower operating voltages indicated by Morawski, for neon-argon as compared to neon-nitrogen."

The examiner noted the two affidavits filed under 37 CFR 1.132 [5] and "assumed that the data sufficiently shows [sic] that [lower peak discharge currents, higher luminous efficiency, and higher memory margin] are in fact attained." However, he pointed out that the primary benefit of using a neon-argon mixture was a lower operating voltage, that this benefit was expected "and is more than sufficient motivation to render obvious the substitution of neon-argon for neon-nitrogen."

The board affirmed the decision of the examiner, stating that a lower operating voltage was a predictable benefit of a neon-argon gas mixture compared to a neon-nitrogen mixture and that the lower peak discharge current, the higher luminous efficiency, and the higher memory margin would have been expected from the decreased operating voltage. It noted that "memory margin" as defined in appellant's specification (see note 2, *supra*) is a function of operating voltage.

5. One affidavit, by appellant, alleging that the luminous efficiency of a neon and .1% atoms of argon mixture is outstandingly greater than that of a neon and 3% atoms of nitrogen mixture, and another affidavit, by David C. Hinson, stating that he person-

### OPINION

We are persuaded that the use of Morawski's neon-argon mixtures in the device of Baker would have been suggested by the collective teachings of Baker, Bitzer, and Morawski. *In re Simon*, 461 F.2d 1387, 59 CCPA 1140 (1972). Both Baker and Bitzer disclose that one critical characteristic of the gas used in their devices is that it be ionized so that the ions and electrons can move to the surfaces of the dielectric members where they are stored; as disclosed by Morawski, neon-argon gas mixtures are effectively ionized.

Moreover, as noted by the examiner and the board, in view of the teaching of Morawski that the amount of decrease in operating voltage is dependent on the closeness of the ionization potential of the added gas to the potential of the metastable level of the carrier gas (where the potential of the added gas is the lesser of the two potentials), one of ordinary skill in the art would have been motivated to use the neon-argon mixture in order to lower the operating voltage, which appellant concedes to be a desirable achievement. As stated by the examiner, and not controverted by appellant:

> The Penning Effect is especially pronounced in Neon + Argon, whose ionization energy, 15.8 eV, is quite close to the 16.5 eV energy of the neon metastable state. . . . By comparison, nitrogen has an ionization energy of 14.8 eV, which is not as close to the neon level as is the argon energy, so that one would not expect neon-nitrogen to have as low an operating voltage as neon-argon. . . . This . . . is the primary reason for using neon-argon in the present invention, as opposed to the neon-nitrogen example of Bitzer et al and Baker et al.

Appellant contends that Morawski discusses the gas solely in contemplation of

ally performed the experiments resulting in the data in Figs. 5 to 10 of appellant's specification and that these data show that the claimed rare gas mixture produces new, unexpected, and unobvious results when utilized in a multiple gaseous display/memory device.

devices in which the electrodes are in direct conductive contact with the gas, while in appellant's device at least one of the electrodes is insulated from the gas. However, the teaching in Morawski of the Penning effect shows that the effect is dependent on the energy levels of the added gas and the carrier gas.

Appellant's contention that Bitzer gives no clear guidance in seeking an ionizable gas having satisfactory performance characteristics of luminosity, memory, and rate of wall charge buildup is not well taken. Clearly, Bitzer discloses that a suitable gas for a display/memory device must produce "a sufficient discharge such as to cause a rapid flow of charges to the cell walls," and Baker discloses that the gas must produce "a copious supply of charges (ions and electrons)." Such teachings would have provided sufficient guidance for choosing gases which have the characteristics specified by appellant for display/memory devices.

Appellant argues that the evidence of record shows unexpected benefits of a higher memory margin, higher luminous efficiency, and lower peak discharge current through the use of the claimed gas mixture and thus establishes the unobviousness of the claimed invention. We agree with appellant that the board erred in finding that the higher luminous efficiency and lower peak discharge current are expected benefits from a lower operating voltage. Neither the board nor the Solicitor has given any evidence or reasoning why an increase in luminous efficiency or decrease in peak discharge current would have been expected from a lower operating voltage, and a mere conclusory statement of expectancy is insufficient. *In re Warner*, 379 F.2d 1011, 1016–17, 54 CCPA 1628, 1634, (1967).

However, we are satisfied that a higher memory margin would have been expected by one of ordinary skill in the art in view of Morawski's disclosure that, due to the Penning effect, a neon-argon mixture is effective in forming ions and electrons; appellant, as well as Baker and Bitzer, states that the memory margin is "due almost entirely to the production and transfer of copious quantities of charge particles produced on discharge from the gas volume to the dielectric charge storage surfaces."

Considering all of the evidence, we are not persuaded that the evidence of the unexpected higher luminous efficiency and lower peak discharge current rebuts the strong showing of obviousness. See *In re Skoll*, 523 F.2d 1392, 1397–98, 187 USPQ 481, 484–85 (Cust. & Pat.App.1975); *In re Freeman*, 474 F.2d 1318, 1322, (Cust. & Pat. App.1973); *In re De Montmollin*, 344 F.2d 976, 52 CCPA 1287 (1965). The expected higher memory margin is of particular significance since it appears to be the most significant improvement for a *memory* device. Appellant has not shown that the unexpected lower peak discharge current and higher luminous efficiency have a significance equal to or greater than that of the expected higher memory margin and lower operating voltage. We recognize that this court has held claims to be unobvious where the prior art suggested the claimed structure and some of its properties but other properties were unexpected. *In re Murch*, 464 F.2d 1051, 59 CCPA 1277 (1972). In *Murch*, the court considered all of the evidence of unobviousness and concluded that it rebutted the evidence of obviousness. Here the evidence of unobviousness does not rebut the evidence of obviousness.

In view of the foregoing, we hold that the claimed subject matter would have been obvious to one of ordinary skill in the art. Accordingly, the decision of the board is *affirmed*.

*AFFIRMED.*