**IN re ELI LILLY & COMPANY.**

**No. 89–1076.**

United States Court of Appeals, Federal Circuit.

April 30, 1990.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington,

D.C., argued for appellant. With him on the brief was Herbert H. Mintz. Also on the brief were Leroy Whitaker and Joseph A. Jones, Eli Lilly & Co., Indianapolis, Ind., of counsel.

John H. Raubitschek, Associate Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

William H. Epstein, Hoffmann–La Roche Inc., Nutley, N.J., argued for intervenor, Hoffmann–La Roche Inc. With him on the brief were Christopher K. Hu and Patricia S. Rocha. Also on the brief was John C. Vassil, Morgan & Finnegan, New York City.

Before NEWMAN and MICHEL, Circuit Judges, and NICHOLS, Senior Circuit Judge.*

PAULINE NEWMAN, Circuit Judge.

The decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (the "Board"), rejecting claims 1–7, all of the claims on reexamination of United States Patent No. 3,794,732, inventor Arthur P. Raun, assignee Eli Lilly & Company (hereinafter "Lilly"), is affirmed.

## Background

The Raun claims are directed to the method of using the chemical compound identified as X537A (common name "lasalocid") to enhance feed conversion efficiency in mature ruminant animals such as cattle and sheep.

Claim 1 of the Raun patent is illustrative:

1. A method of increasing the efficiency of feed utilization of ruminant animals having a developed rumen function which comprises the oral administration to such animals of a propionate-increasing amount of an antibiotic chosen from the group consisting of X537A and its physiologically acceptable esters and salts.

* The Honorable Philip Nichols, Jr., who died on January 26, 1990, did not participate in this decision.

The Board held the claims unpatentable in terms of 35 U.S.C. § 103, in view of certain Berger United States and foreign patents. All the Berger references discuss control of coccidiosis in fowl by treatment with X537A, and the weight gain effect of this treatment, as follows:

The active ingredient when orally administered to coccidiosis susceptible domestic fowl, particularly turkeys and chickens, as a component of feed, effectively controls the disease by either preventing it or curing it after it occurs. Furthermore, the treated fowl either maintain their weight or actually gain weight when compared to controls. Thus, the compositions of this invention not only control coccidiosis, but also, aid in improving the efficiency of conversion of feed to weight gains.

Berger U.S. Patent No. 3,719,753, column 5, lines 3–11. Berger's Southern Rhodesian patent No. 350/68/372 (June 30, 1962) includes the following disclosure, appearing as claim 23 of that patent:

A composition aiding in improving the efficiency of conversion of feed to weight gains in animals raised commercially for food purposes comprising ... antibiotic X–537A and pharmaceutically acceptable salts thereof.

The Southern Rhodesian patent describes (in claims 24–25) the dosages of X537A in these compositions, and also discloses (as the text of claims 26–29) an "animal feed composition" containing X537A "for aiding in improving the efficiency of conversion of feed to weight gains". The Berger references state that animals raised commercially for food purposes and subject to coccidiosis are "poultry ..., sheep, cattle, swine, etc."

The Berger data show an average weight gain of *Eimeria tanella* (coccidiosis) infected chickens treated with X537A that was greater than the weight gain of untreated infected chickens, Berger stating "[i]t should also be noted from the data in the table that the use of antibiotic as a coccidio-

stat does not substantially adversely affect the conversion of feed to weight gain" in the infected chickens. In the example for multiple *Eimeria* infections the average weight gain of treated infected chickens was shown as 108% and 105%, compared with untreated uninfected controls at 100%. *Id.* at columns 9–10. Berger described the weight gain effect in chickens as "greater than expected":

[T]he antibiotic is ... further significant in causing greater than expected efficiency of conversion of feed to weight gain in the chickens[.]

*Id.* at column 10, lines 64–67. Berger does not present experimental data for any animal other than chickens.

In response to the examiner's rejection of the claims based on the Berger references, Lilly argued that Raun had shown certain unexpected results pertinent to weight gain in ruminant animals, and presented evidence and argument in support of patentability. The Board held, on the entire record, that the invention of the Raun claims would have been obvious in terms of Section 103.

### Discussion

The Board held that a *prima facie* case of obviousness was made by the Berger references. We agree, for the references show the same compound, X537A, as having the same general property of enhancing weight gain in animals. The burden thus was upon Lilly to come forward with evidence of the unobviousness of its claimed invention of the use of X537A to enhance weight gain in mature ruminant animals. After a *prima facie* case of obviousness has been made and rebuttal evidence submitted, all the evidence must be considered anew. *In re Piasecki*, 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed.Cir. 1984):

When prima facie obviousness is established and evidence is submitted in rebuttal, the decision-maker must start over.... An earlier decision should not, as it was here, be considered as set in concrete, and applicant's rebuttal evidence then be evaluated only on its

knockdown ability.... Facts established by rebuttal evidence must be evaluated along with the facts on which the earlier conclusion was reached, not against the conclusion itself.

(quoting *In re Rinehart*, 531 F.2d 1048, 1052, 189 USPQ 143, 147 (CCPA 1976)).

Lilly provided expert opinions, documentary evidence and experimental data. Intervenor Hoffmann–La Roche ("Roche"), the assignee of the Berger United States patent, provided contrary analysis and argument.

Lilly argues that the most reasonable reading of the Berger references, including the Berger foreign patents, is as showing the use of X537A for treatment or prophylaxis of coccidiosis-infected chickens, and that it is unwarranted to read Berger's broad statements as teaching or suggesting the enhanced efficiency of weight gain in such animals as cattle and sheep. Lilly stresses that Berger does not provide data on the effects of feeding X537A to any animal except chickens, and does not state that X537A should be fed to healthy cattle, or even to healthy chickens, in order to enhance their feed to weight gain efficiency. Lilly argues that at most Berger offers an invitation to experiment; that is, that the Berger teachings are in the discredited "obvious-to-try" category of disclosure insofar as they affect the Raun claimed invention.

An "obvious-to-try" situation exists when a general disclosure may pique the scientist's curiosity, such that further investigation might be done as a result of the disclosure, but the disclosure itself does not contain a sufficient teaching of how to obtain the desired result, or that the claimed result would be obtained if certain directions were pursued. *See generally In re O'Farrell*, 853 F.2d 894, 903, 7 USPQ2d 1673, 1681 (Fed.Cir.1988) (defining obvious-to-try as when prior art gives "only general guidance as to the particular form of the claimed invention or how to achieve it").

Lilly presented the opinions of two persons, experienced in the field of animal husbandry, who stated that they viewed the Berger references as showing that the

use of X537A to treat coccidiosis-infected chickens simply relieved the stress of the disease, thereby improving weight gain in chickens. One of these persons stated that because of the different digestive metabolisms of ruminants, as compared with chickens, the weight gain shown by Berger for chickens would not have led him to expect that X537A would be effective for weight gain purposes with cattle and sheep. Lilly presented experimental data that mature cattle (having a developed rumen function) experienced a higher percentage weight gain due to X537A, as compared with immature (unweaned, rumen function undeveloped) calves. Lilly argues that this result was unexpected, and overcomes any *prima facie* case of obviousness.

These arguments are countered by intervenor Roche. Roche stresses that the Berger foreign references describe X537A compositions for improving weight gain in animals grown commercially for food ("poultry ..., cattle, sheep, swine, etc."), and that the Southern Rhodesian patent disclosure is not limited to coccidiosis-infected animals or to chickens. Roche points to references showing compounds that improve weight gain in both poultry and cattle as evidence supporting obviousness of the Raun claimed invention.

Roche also challenges the significance of Lilly's data comparing the weight gains of calves and cattle, Roche arguing that Lilly's unweaned calves, even without treatment with X537A, were such highly efficient utilizers of their liquid feed that Lilly's comparisons are not probative of unexpected results with cattle. The data are shown in the following chart, accompanied by Lilly's interpretation thereof and Roche's counter-analysis.

|  | Calves | | Steers | |
|---|---|---|---|---|
|  | Control | X537A | Control | X537A |
| A. Av. daily intake (lbs) | 3.04 | 3.05 | 16.76 | 15.77 |
| B. Av. daily gain (lbs) | 2.38 | 2.44 | 3.18 | 3.47 |
| Lilly's Analysis: | | | | |
| Intake/Gain (A/B ratio) | 1.28 | 1.25 | 5.28 | 4.55 |
| % Improvement over Control | — | 2.3% | — | 13.8% |
| Roche's Analysis: | | | | |
| Gain/Intake (B/A %) | 78.3% | 80.0% | 19.0% | 22.0% |
| Improvement over Control | — | 1.7% | — | 3.0% |
| % of Maximum Improvement | — | 7.8% | — | 3.7% |

Lilly's expert explained that the observed improvement for the calves was not significant, but that the improvement for steers was significant, and that the difference from calves was unexpected. Roche asserts that because calves are already so efficient in utilization of feed, the treatment with X537A actually had a greater proportional impact on the calves than on the steers.

The Board held that Lilly's evidence of improved feed efficiency in steers as compared with calves did not outweigh the evidence of the Berger teachings that the conversion of feed to weight gains is improved in animals raised commercially for food, including cattle.

Each side asserts that its position is required by precedent. Lilly cites *In re Yates*, 663 F.2d 1054, 1056–57, 211 USPQ 1149, 1151 (CCPA 1981) (process patentable based on previously unknown relationship among variables); *In re Orfeo*, 440 F.2d 439, 442, 169 USPQ 487, 489 (CCPA 1971) (method of use patentable based on unexpected superiority in known properties of known compounds); and *In re Chupp*, 816 F.2d 643, 646, 2 USPQ2d 1437, 1439 (Fed. Cir.1987) (new compound patentable based on unexpected results in one of a spectrum of common properties), in support of its position that the difference between weight gains of steers and calves establishes patentability of the Raun claims. Rejecting

these cases as inapt on their facts, the Commissioner states that the Board correctly relied on *In re Nolan*, 553 F.2d 1261, 1267, 193 USPQ 641, 645 (CCPA 1977) (improvement in gaseous discharge device and process unpatentable because although unexpected results were shown in some features, the results were not unexpected in the most significant feature).

In *Yates* the prior art showed the same chemical process as that of the applicant for oxidizing an olefin to an unsaturated aldehyde, but contained no express teaching of the specific relationship between process variables that was demonstrated by the applicant. 663 F.2d at 1057, 211 USPQ at 1151. The court held that the relationship was unobvious from the prior art, and authorized claims specific to the combination of process variables.

In *Chupp* the claimed invention was a new herbicidal compound that was within a known class of herbicides. The claimed compound was the homolog (*i.e.*, differing by a methylene (–CH$_2$) group) of a known herbicidal compound. Chupp submitted data showing that his new compound had selective herbicidal activity as to specific crops and weeds that was at least five times greater than that of the known homolog. The court held Chupp's new compound to be patentable because it possessed unexpectedly superior herbicidal properties compared to the prior art compound. *Chupp*, 816 F.2d at 646–47, 2 USPQ2d at 1439–40.

In *Orfeo* the references showed the use of certain halocarbons as refrigerants, and also showed the use of mixtures of halocarbons for this purpose. Orfeo's claimed invention was the azeotrope of two of these halocarbons, which formed a refrigerant that had an unexpectedly lower power requirement than either of the components alone. The court explained that "even though the claimed invention involves the use of a known compound in a known process it is still unobvious to one of ordinary skill in the art because of the new and unexpected results and effects achieved." 440 F.2d at 442, 169 USPQ at 489.

The Board held that these authorities were factually distinguished from the Raun situation, or simply limited to their facts. The Board cited *Nolan, supra,* as more closely analogous to the factual situation at bar. In *Nolan* the applicant claimed the use of a specific ionizable noble gas composition as an improvement in a gaseous discharge display/memory device. Although the prior art showed the use of similar noble gas compositions in gaseous discharge devices, the applicant argued that his specific composition had unexpected performance benefits in memory devices. The court found that the most significant of Nolan's alleged performance benefits followed from the known ionization potential of the gas, and thus was taught in and expected from the prior art, whereas only some less significant benefits were shown to be unexpected from the prior art. The court held that the evidence of obviousness outweighed the evidence of unobviousness. 553 F.2d at 1267, 193 USPQ at 645.

### Analysis

Review of the authorities relied on by both sides shows the absence of detailed all-purpose criteria for applying the law of obviousness to every factual situation. No one precedent or rationale can be controlling in all possible areas of human creativity. See the extensive review of cases in *In re Dillon*, 892 F.2d 1554, 13 USPQ2d 1337 (Fed.Cir.1989), illustrating the variety of factors that courts have considered in deciding the question of obviousness of particular inventions. The value of the exceedingly large body of precedent wherein our predecessor courts and this court have applied the law of obviousness to particular facts, is that there has been built a wide spectrum of illustrations and accompanying reasoning, that have been melded into a fairly consistent application of law to a great variety of facts. The uniform application of the law of "obviousness" is essential to the commercial incentive that is the core of the patent system. The obligation of the decisionmaker is to apply the law consistently to the evidence for each new invention. All relevant facts must be considered, while recognizing that it is inap-

propriate to "squeez[e] new factual situations into preestablished pigeonholes." *Yates*, 663 F.2d at 1056 n. 4, 211 USPQ at 1151 n. 4.

In each of *Yates, Orfeo, Chupp,* and *Nolan*, the prior art showed the same general composition or method as did the applicant. In each of these cases the applicant referred to comparative data for the purpose of demonstrating that the claimed invention would not have been obvious to a person of ordinary skill in the field of the invention. The substance of these comparisons varied with the nature of each invention. In *Yates* the data were contained in the application as filed, and the court held that in considering these data the PTO had not made a *prima facie* case of obviousness. In *Chupp* and *Orfeo* the applicant's additional evidence of superior or unexpected results in the claimed inventions, as compared with similar properties and uses shown in the prior art, was held to outweigh the evidence of obviousness; whereas in *Nolan* the evidence of superior results was held inadequate to outweigh the evidence of obviousness.

In the case before us, the prior art showed the compound X537A and its general use to enhance weight gain in animals.[1] The Board placed great weight on Berger's statements that X537A compositions "aid in improving the efficiency of conversion of feed to weight gains in animals raised commercially for food purposes," and that such animals include "poultry ..., sheep, cattle, swine, etc." This general teaching was not shown to be incorrect.

We have considered Lilly's argument and supporting documents that X537A is of commercial importance and superior to other products. In this case, however, Berger disclosed the same product, X537A, for the same use that Raun seeks to claim. The Berger disclosure does not merely invite experimentation, for Berger states that this specific product has the specific property of aiding weight gain in animals, naming cattle and sheep. *See O'Farrell*, 853 F.2d at 901, 7 USPQ2d at 1679 ("Thus, the prior art explicitly suggested the substitution that is the difference between the claimed invention and the prior art, and presented preliminary evidence suggesting that the method could be used to make proteins.") Although we recognize and give weight to the unpredictability of biological properties, in Raun's case the prior art teaches the claimed use with specificity.

In view of all of the evidence of record, we think the Board was correct in holding that the evidence of unobviousness did not outweigh the clear teaching of the prior art of the property and use of "increasing the efficiency of feed utilization in ruminant animals", quoting from Raun's claim 1. Unlike *Yates*, Raun is not claiming a narrow improvement limited to details ' not shown in the prior art. Unlike *Chupp*, Raun has not shown unexpected superiority over the property taught in the prior art. Unlike *Orfeo*, Raun has not shown that his claimed use with ruminants achieves unexpected results compared with the prior art disclosure of the same use with the same animals. Like *Nolan*, Raun has not shown that a significant aspect of his claimed invention is unexpected in light of the prior art.

We conclude that the Board correctly held that Raun's claimed invention would have been obvious in terms of 35 U.S.C. § 103.

AFFIRMED.

---

1. This is the distinction from the decision in *Eli Lilly & Co. v. A.H. Robins Co.*, 228 USPQ 757 (E.D.Va.1985), *aff'd*, 790 F.2d 95 (Fed.Cir.) (table), *cert. denied*, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 54 (1986). In the *Robins* case, according to the published opinion, the claimed use of salinomycin to enhance weight gain in ruminants was not taught or suggested in the prior art, 228 USPQ at 759, unlike the facts of the case at bar.