### In the Matter of the Application of Merceline L. SKOLL.

### Patent Appeal No. 75–547.

United States Court of Customs and Patent Appeals.

Oct. 23, 1975.

Glenn O. Starke, Milwaukee, Wis., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 10–15, all of the claims in application serial No. 152,412, filed June 11, 1971 for a "Method of Electroless Plating." We affirm in part and reverse in part.

## Background

The subject matter of the claims is an aqueous solution for electroless plating. The solution contains a water-soluble metal salt, a water-soluble hydrolyzed carbohydrate, and a gluconic acid component selected from the group consisting of gluconic acid, glucono delta lactone, and water-soluble salts of gluconic acid.

The metal salt, which is the source of the metal ions to be plated, may be selected from a wide variety of water-soluble metal salts including salts of gold, silver, copper, etc. The water-soluble carbohydrate may be a monosaccharide, a disaccharide, or a polysaccharide. The carbohydrate is present in a concentration greater than 5 grams per 100 milliliters of the solution. Suitable water-soluble salts of gluconic acid include sodium gluconate, potassium gluconate, and the like. The solution may optionally contain an additional acid component. The solution may also optionally contain phytol or guanylic acid.

It has been found by appellant that by using a relatively large concentration of hydrolyzed carbohydrate in combination with a gluconic acid component, an increased rate of deposition of metal ions is achieved. The addition of phytol or guanylic acid to the plating solution further increases the rate of deposition of metal ions. The optional additional acid component is said to aid in obtaining special colors, tones, etc.

Claim 10 is representative:

10. An electroless plating solution for plating a base material, consisting essentially of a water solution having dissolved therein, a water soluble metal salt, an acidic component selected from the group consisting of gluconic acid, glucono delta lactone, and water soluble salts of gluconic acid, and a water soluble hydrolyzed carbohydrate, said carbohydrate being present in a concentration greater than 5 grams per 100 ml of said solution and said solution having a pH in the range of 0.5 to 7.0.

Claims 11–15 are dependent on claim 10.

### Rejections

The patents relied upon by the board are:

Gostin et al. (Gostin)  3,032,436    May 1, 1962

Robinson               3,230,098    January 18, 1966

Gostin discloses an aqueous solution for gold plating metallic articles by an electroless deposition process which is said to deposit a gold plate rapidly and uniformly. The plating solution contains a water-soluble gold salt, a reducing agent which may be glucose or another sugar, a buffer which may be an ammonium salt of a carboxylic acid, and a weak acid or base sufficient to produce the desired pH. It is disclosed that the amount of gold deposited is a function of the temperature of the plating solution, the concentration of reducing agent, and the pH of the bath.

Robinson discloses an aqueous solution for gold plating metallic articles by an electroless deposition process which is said to deposit a gold film of uniform thickness and good adherence. The plating solution contains a water-soluble gold salt, an ammonium buffering agent, and an organic chelating agent. The ammonium buffering agent may be the ammonium salt of a weak acid and may, for example be ammonium gluconate. In addition to regulating the pH of the plating solution, the ammonium buffering agent may serve to accelerate the rate of plating, i. e., to increase the rate of deposition of metal ions, by attacking the metal surface to be plated.

The examiner rejected the claims as obvious in view of Gostin taken together with Robinson under 35 U.S.C. § 103, and the board affirmed. In response to the examiner's rejection under 35 U.S.C. § 103, appellant submitted an affidavit setting forth a series of tests illustrating the improved results achieved by using the claimed metal plating solution. The examiner found the affidavit insufficient to overcome the prior art because the tests discussed in the affidavit were not commensurate with the scope of the

claims. The board examined the affidavit and found that it was not convincing.

The examiner also rejected claims 10 through 15 as indefinite and of uncertain scope under 35 U.S.C. § 112, second paragraph, and the board affirmed. The examiner specifically objected to the expressions "water soluble hydrolyzed carbohydrate" and "organic and inorganic acids" (appearing only in claim 15 *).

## OPINION

### Section 112

■ We first consider the expression "organic and inorganic acids," which is said to be indefinite and of uncertain scope. We cannot agree. Although there are undoubtedly a large number of acids which come within the scope of "organic and inorganic acids," the expression is not for that reason indefinite. We see no reason to believe that the public would be confused as to what *subject matter* is circumscribed by appellant's claim. *In re Kroekel,* 504 F.2d 1143 (CCPA 1974). Whether or not a substance comes within the class of "organic and inorganic acids" is rendered no less certain by the large number of substances within the class. The board's comment that it is not clear that all acids will give the desired results is relevant to a rejection under 35 U.S.C. § 112, first paragraph, *not* 35 U.S.C. § 112, second paragraph. There is no first paragraph rejection in this case. We conclude that the expression "organic and inorganic acids" is not indefinite.

With regard to "water soluble hydrolyzed carbohydrate," the board noted that the specification disclosed many carbohydrates but found no adequate reference in the specification for "*hydrolyzed* carbohydrates." The board held that the claims were of uncertain scope as to this expression. It is appellant's position that the controversy centers on the meaning of the term "hydrolyzed." We agree. The word appears in claim 10 in

the following context: "An electroless plating solution . . . consisting essentially of a water solution having dissolved therein . . . a water soluble hydrolyzed carbohydrate . . .."

In her specification appellant makes the following statements:

The carbohydrate is preferably an oligosaccharide which is defined as a compound that, on complete hydrolysis, gives one or more monosaccharides in relatively small numbers per molecule.

When added to the aqueous plating solution, the carbohydrate, over a period of time, will hydrolyze, and the hydrolyzation, it is believed, acts to shorten the effective length of the carbon chains in the carbohydrate and increase the Angstrom potential, thereby increasing the rate of deposition or throwing power of the plating bath. The time required to achieve hydrolyzation depends on various factors such as the quantity or volume of the bath, the concentration of the carbohydrate and the agitation of the bath. Large volumes, such as a 55 gallon drum, may require a period, with agitation, of 48 hours to complete hydrolyzation of the carbohydrate. With smaller volumes hydrolyzation can be accomplished in 3 or 4 hours or more.

In her brief appellant makes the following statements:

"Hydrolyzed" refers to the act of undergoing hydrolysis and "hydrolysis" is defined as:

"A chemical reaction of water in which a bond in the reactant other than water is split and hydrogen and hydroxyl are added with the formation of two or more new compounds." *Webster's Third International Dictionary.*

Similarly, "hydrolysis" is defined in *Chemical Dictionary, Hackl* [sic], as:

"Any decomposition reaction which is caused by water."

* Claim 15. The plating solution of claim 10, wherein the solution also contains a second acid component separate from the first acid component and selected from the group consisting of organic and inorganic acids, the total acid concentration of said solution being greater than 1 gr. per ml of solution.

We agree with these two definitions of "hydrolysis" and would add a third from *The Condensed Chemical Dictionary* 456 (8th ed. 1971):

A chemical reaction in which water reacts with another substance to form one or more new substances. This involves splitting of the water molecule into ions. Examples are the conversion of starch to glucose by water in the presence of suitable catalysts; the conversion of sucrose (cane sugar) to glucose and fructose by reaction with water, in the presence of an enzyme or acid catalyst; the conversion of natural fats into fatty acids and glycerin by reaction with water in one process of soap manufacture; and the reaction of the ions of a dissolved salt to form various products, such as acids, complex ions, etc.

■ The solicitor interprets the board's statement regarding "hydrolyzed carbohydrates" as meaning that the board felt that the nature of the hydrolyzed carbohydrates, or the extent to which the polysaccharides had been hydrolyzed, had not been described in full, clear, concise, and exact terms. A person of ordinary skill in the art would be aware that the term "hydrolyzed carbohydrate" means a carbohydrate which has reacted with water. We find that the "water soluble hydrolyzed carbohydrate" is described in appellant's specification in such full, clear, concise, and exact terms that its meaning can be definitely determined.

We conclude that the expression "water soluble hydrolyzed carbohydrate" is not of uncertain scope. We reverse the rejection of all of the appealed claims under 35 U.S.C. § 112, second paragraph.

## Section 103

The claims were further rejected as obvious in view of Gostin taken together with Robinson under 35 U.S.C. § 103.

■ We agree with appellant that the general rule applicable to a rejection based on a combination of references was stated by this court in *In re Schaffer,* 229 F.2d 476, 479, 43 CCPA 758, 761–62 (1956):

[R]eferences may be combined for the purpose of showing that a claim is unpatentable. However, they may not be combined indiscriminately, and to determine whether the combination of references is proper, the following criterion is often used: namely, whether the prior art suggests doing what an applicant has done. . . . [I]t is not enough for a valid rejection to view the prior art in retrospect once an applicant's disclosure is known. The art applied should be viewed by itself to see if it fairly disclosed doing what an applicant has done.

■ With this criterion in mind, we first consider whether the Gostin and the Robinson references were properly viewed together. Both references disclose gold plating metallic articles by an electroless deposition process, i. e., by simply immersing the article to be plated in the plating solution (without applying any electrical potential as in the case of electrolytic plating). Thus, both disclosures are directed to the same technological field as the claimed subject matter. A person of ordinary skill in that art is presumed to be aware of these references.

It is an object of the Gostin process to deposit a gold plate *rapidly* on metal objects immersed in the plating solution. The Gostin plating solution differs from the subject matter of claim 10 in that no specific amount of sugar is disclosed in Gostin, and further in that there is no disclosure of an acidic component selected from the group consisting of gluconic acid, glucono delta lactone, and water-soluble salts of gluconic acid in Gostin. Gostin does disclose that it is desirable to maintain the pH of the plating solution nearly neutral and that for this purpose a buffering agent is added to the solution. Although the preferred buffering agent is ammonium citrate, ammonium salts of other similar carboxylic acids may be used.

■ Robinson discloses that an ammonium buffering agent, i. e., the ammoni-

um salt of a weak acid, may serve in his plating solution *to accelerate the plating* by attacking the surface of the article to be plated. Robinson discloses suitable ammonium buffering agents to include ammonium citrate, ammonium tartrate, ammonium borate, ammonium gluconate, or ammonium acetate. We believe that Robinson would suggest to one of ordinary skill in this art the desirability of substituting any of these ammonium buffering agents as the ammonium salt of a carboxylic acid in the plating solution of Gostin. The desirability of such a substitution comes from the Robinson reference itself. Expected beneficial results are evidence of obviousness of a claimed invention, just as unexpected beneficial results are evidence of unobviousness. *In re Skoner,* 517 F.2d 947, 950 (CCPA 1975); *In re Gershon,* 372 F.2d 535, 537, 54 CCPA 1066, 1069 (1967).

To rebut this evidence of obviousness, appellant submitted an affidavit in an attempt to prove that the amount of carbohydrate required by the claims is essential, that the gluconic acid component cannot be replaced by either ammonium citrate or by an inorganic acid such as hydrochloric acid, and that the combination of carbohydrate and gluconic acid component is essential. With regard to the alleged criticality of the amount of carbohydrate, the board noted that Test VIII gave a copper plating of 0.5 mil thickness when 50 grams of sucrose was employed (the minimum amount required by the claims), while Test V gave a copper plating of 0.4 mil thickness when 10 grams of sucrose was employed. We agree with the board in finding the difference in these two platings insignificant.

<div style="display:flex">

Test VIII

```
100 g copper sulfate
500 ml 50% ammonium gluconate
500 ml water
 50 g  sucrose
```

Test V

```
100 g  copper sulfate
500 ml 50% gluconic acid
500 ml water
 10 g  sucrose
```

</div>

Appellant, in her brief, argues that this comparison is unreasonable because gluconic acid is expressly disclosed in her specification (and therefore preferred), whereas ammonium gluconate is not expressly disclosed (and therefore not preferred). Appellant admits that ammonium gluconate, a water-soluble salt of gluconic acid, is within the scope of the claims. We find appellant's argument lacking in merit. It will be remembered that the Markush group in claim 10 is the group consisting of gluconic acid, glucono delta lactone, and water-soluble salts of gluconic acid. By the presentation of this Markush group, appellant has made a representation that for the purpose of the claimed invention the elements of the group are equivalents.

Having made the representation that water-soluble salts of gluconic acid are equivalent to gluconic acid for the purpose of the claimed plating solution, appellant may not now argue that these two elements are not equivalents. We conclude that the board's comparison of Test VIII with Test V was reasonable and that the affidavit fails to support appellant's allegation that the amount of carbohydrate required by the claims is critical.

■■ The affidavit was also presented by appellant to demonstrate that ammonium citrate cannot be substituted for ammonium gluconate in the claimed plating solution. The affidavit, however, presents only one comparison.

<div style="display:flex">

Test VIII

```
100 g  copper sulfate
500 ml 50% ammonium gluconate
500 ml water
 50 g  sucrose
```

Test IX

```
100 g  copper sulfate
500 ml 50% ammonium citrate
500 ml water
 50 g  sucrose
```

</div>

As noted above, Test VIII gives a copper plating of 0.5 mil thickness, while Test IX gives a spotty plating said to be of no commercial value. We agree with the board that the affidavit demonstrates that ammonium citrate cannot be substituted for ammonium gluconate in copper plating solutions. But none of the claims is limited to copper plating solutions. The references suggest that ammonium gluconate is equivalent to ammonium citrate in gold plating solutions. Appellant has presented no evidence that this suggestion of the references is not correct. Appellant's claimed plating solution may contain *any* water-soluble metal salt. The quantum of evidence required to establish unobviousness will depend upon the strength of the showing of obviousness made by the prior art. *In re Saunders,* 444 F.2d 599, 58 CCPA 1316 (1971). In the facts of this case, where appellant has failed to present evidence to rebut the specific suggestion of the prior art, we conclude that the affidavit is inadequate to overcome the showing of obviousness made by the prior art. We will, therefore, affirm the rejection of claim 10 under 35 U.S.C. § 103.

Claims 11, 12, and 13 add further limitations to the carbohydrate component of the plating solution. As we have already discussed, the prior art teaches the presence of a carbohydrate component in the plating solution and there is no evidence that the concentration of carbohydrate is critical. Appellant's specification does not disclose any critical difference between the use of an oligosaccharide rather than any other water-soluble carbohydrate. We will, therefore, affirm the rejection of claims 11, 12, and 13 under 35 U.S.C. § 103.

Claim 14 requires the addition of phytol or guanylic acid to the plating solution. There is no disclosure in the prior art of either phytol or guanylic acid. Because there is no disclosure in the prior art, the rejection of claim 14 under 35 U.S.C. § 103 must be reversed for lack of evidence of obviousness.

Claim 15 requires the addition of a second acid component in addition to the gluconic acid component. This second acid may be any organic or inorganic acid. Gostin discloses the addition of an acid to regulate the pH of the plating solution. Since claim 15 does not limit the second acid to any specific function, it may regulate the pH of the plating solution. We will, therefore, affirm the rejection of claim 15 under 35 U.S.C. § 103.

### Conclusion

The decision of the board affirming the rejection of claims 10, 11, 12, 13, and 15 is *affirmed.* The decision of the board affirming the rejection of claim 14 is *reversed.*

*Modified.*