91 F.3d 169
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ECOLOCHEM, INC., Plaintiff-Appellant,
v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant-Appellee.
 United States Court of Appeals, Federal Circuit.
 Decided June 5, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
 July 30, 1996.
 
 Before NEWMAN, MICHEL and CLEVENGERS, Circuit Judges.
 MICHEL, Circuit Judge.
 
 Decision
 
 1
 Ecolochem, Inc. (Ecolochem) appeals the summary judgment of the U.S. District Court for the Central District of California, No. CV 92-3436 RG, finding claims 1, 2, 5 and 6 of U.S. Patent No. 4,556,492 (the '492 patent) anticipated, and holding claims 7 and 10 of the '492 patent and claim 20 of U.S. Patent No. 4,818,411 (the '411 patent) obvious. The appeal was submitted for decision after oral argument on December 7, 1995. We affirm the findings of anticipation and the conclusions of obviousness of claims 7 and 10 of the '492 patent, but reverse the conclusion of obviousness of claim 20 of the '411 patent and remand for further proceedings.
 
 I. Background
 
 2
 Ecolochem combined the Houghton process with an ion exchange resin to remove excess hydrazine and carbon contaminants and was awarded two patents based on this invention, the '492 patent and the '411 patent (a continuation of the '492 patent application). As prior art, the examiner cited references to applications of the Houghton process and the known use of hydrazine to deoxygenate liquid. In addition, with respect to the '411 patent, the examiner cited references, including Akol'zin, that teach the use of filters and ion exchange resins to remove liquid contaminants. Claim 1 of the '492 patent reads:
 
 
 3
 1. a deoxygenation process comprising a first step of adding hydrazine to a liquid containing dissolved oxygen, a second step of passing said liquid through a bed of activated carbon to catalyze a reaction between said dissolved oxygen and said hydrazine whereby an amount of dissolved carbon contaminants are added to said liquid, and a third step of passing said liquid through an ion exchange resin selected from the group consisting of mixed bed resin and cation resin to remove at least said dissolved contaminants.
 
 
 4
 (Claims 2, 5, and 6 are dependent on independent claim 1; claim 7 is dependent on claim 6; claim 10 is dependent on claim 9 which is dependent on independent claim 8.) Claim 1 recites three basic steps: 1) adding hydrazine to a liquid containing dissolved oxygen, 2) catalyzing the reaction between the dissolved oxygen and the hydrazine using activated carbon, and 3) removing dissolved carbon contaminants with an ion exchange resin. Claim 2 adds a filtration step to remove undissolved carbon contaminants; claim 5 recites the additional removal of unreacted hydrazine through the ion exchange resin; claim 6 limits the liquid of claim 1 to water; claim 8 is similar to claim 1 but requires the removal of excess hydrazine in the third step, not the dissolved carbon contaminants; and claims 7 and 10 add a final step of circulating the deoxygenated water at elevated temperature conditions in a power generating apparatus. Claim 20 of the '411 patent is similar to claim 1 of the '492 patent but omits the first step of the process, taking into account that hydrazine may already be present, and claims the removal of dissolved carbon contaminants with both cation and anion exchange resins in series. On Southern California Edison Co.'s (Edison) motion for summary judgment, the district court found that claims 1, 2, 5 and 6 of the '492 patent are anticipated by Demmitt, a reference not considered by the examiner during prosection of the application leading to the issuance of the patents in suit, and held that, in light of Demmitt, claims 7 and 10 of the '492 patent and claim 20 of the '411 patent are obvious under 35 U.S.C. § 103.[1] Ecolochem appeals from the judgment based on these findings and conclusions which it challenges.
 
 II. Standard of Review
 
 5
 We review the district court's grant of summary judgment de novo, resolving all doubts respecting the presence or absence of genuine factual issues in the nonmovant's favor. Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 619, 34 USPQ 2d 1816, 1819 (Fed.Cir.1995). Proper claim construction is a question of law which we review de novo. Markman v. Westview Instruments, Inc. 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), aff'd, 116 S.Ct. 1384 (1996).
 
 III. Anticipation
 
 6
 It is undisputed that the Demmitt reference discloses an application of the Houghton process followed by the use of a cation exchange resin to remove hydrazine from the liquid. The reference does not disclose that carbon contaminants are added to the liquid by the Houghton process, nor does it indicate the desirability of removing those dissolved carbon contaminants. By its very nature, however, the cation resin removes cationic dissolved carbon contaminants. Furthermore, it is agreed by the parties that most, if not all, carbon sources used in the Houghton process would leach anionic as well as cationic contaminants. Since anticipation is shown where each and every limitation of the claimed invention is found in a single prior art reference, In re Donohue, 766 F.2d 531, 534, 226 USPQ 619, 621 (Fed.Cir.1985), Demmitt anticipates claim 1 if that claim requires only the removal of dissolved cationic carbon contaminants, rather than all of the dissolved carbon contaminants, both cationic and anionic.
 
 
 7
 A claim is construed by looking at the language of the claim, other claims in the patent, the specification and, where in evidence, the prosecution history. Markman, 52 F.3d at 979, 34 USPQ2d at 1329. Claim 1 recites a "deoxygenation process comprising a first step of adding hydrazine ... a second step ... [where] carbon contaminants are added ... and a third step of passing said liquid through an ion exchange resin selected from the group consisting of mixed bed resin and cation resin to remove at least said dissolved contaminants." Ecolochem argues that it is clear from the language of the claim itself, the specification, and the prosecution history of the patent that claim 1 recites a process including a limitation that all dissolved carbon contaminants are to be removed by the ion exchange resin.
 
 
 8
 Analyzing the language of the claim, we observe that step three of claim 1 is written in the alternative using the Markush format. By claiming a Markush group, Ecolochem has indicated that, for the purpose of claim validity, the members of the claimed group are functionally equivalent. Thus, if utilizing one element of the group is anticipated or obvious, the patentee is precluded from arguing that the claim is valid. See In re Skoll, 523 F.2d 1392, 1397, 187 USPQ 481, 484-85 (CCPA 1975). Accordingly, if either alternative in the Markush group of step three, i.e., employing a cation resin or a mixed bed resin, is anticipated, the entire claim is anticipated.
 
 
 9
 Demmitt clearly discloses the use of the Houghton process on oxygenated water followed by use of a cation exchange resin. As discussed above, Demmitt meets all the limitations of one of the claimed alternatives in claim 1 of the '492 patent (i.e., using a cation exchange resin to remove dissolved contaminants). Accordingly, it would appear that claim 1 is anticipated by Demmitt.
 
 
 10
 Ecolochem argues, however, that, despite the recitation of a cation exchange resin as an element of the Markush group, there is a limitation in the claim requiring that all dissolved carbon contaminants be removed. This result can be accomplished, Ecolochem claims, by the use of a mixed bed resin or by the use of a cation resin in combination with an anion resin, and since claim 1 is written using the open-ended term "comprising," the claim should be construed to include the use of additional elements, i.e., addition of an anion resin to follow the cation resin of the second alternative. Placement of "comprising" before recitation of steps, however, results in a "comprising" claim that would cover a process that includes additional steps, not one that uses an additional unrecited element for accomplishing a claimed step. See Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1271, 229 USPQ 805, 812 (Fed.Cir.1986), cert. denied, 479 U.S. 1030 (1987) ("While a transitional term such as 'comprising' or, as in the present case, 'which comprises,' does not exclude additional unrecited ... steps ... we conclude that the transitional phrase does not ... affect the scope of the particular structure recited within the method claim's steps.") Thus, all the claim requires, in step three, is that either a mixed bed resin or a cation exchange resin be used exclusively to achieve the stated goal of removing dissolved carbon contaminants added in step two. In sum, a patentee may not import additional limitations into the steps of a process claim merely by using the word "comprising" in the claim preamble. Accordingly, claim 1 is anticipated by Demmitt.[2]
 
 
 11
 Because Demmitt clearly discloses the use of water as the liquid to deoxygenate and that the cation exchange resin can be used to remove excess hydrazine, claims 5 and 6 of the '492 patent are anticipated by Demmitt as well. It is unclear why claim 2, which also calls for the removal of undissolved contaminants, was found to be anticipated by Demmitt. In any event, because Ecolochem fails to distinguish claim 2 from claim 1 for purposes of anticipation, we also affirm the finding on summary judgment that, on the undisputed facts, Demmitt anticipates claim 2.[3]
 
 IV. Obviousness
 A. Claims 7 and 10 of the '492 Patent
 
 12
 The district court held claims 7 and 10 of the '492 patent obvious in light of the prior art. Claim 7 is dependent on claim 6, held to be anticipated by Demmitt, and claim 10 is dependent on claim 9, admitted by Ecolochem to be anticipated by Demmitt. Both claims add a final step of circulating the deoxygenated water at the conditions of elevated temperature in a power generating apparatus. The Demmitt reference specifically states that the tests he was conducting were on a system that "would be useful in high temperature reactors." In addition, the 1982 Bechtel reference (Bechtel) discusses the benefits of using carbon catalyzed hydrazine in a PWR steam generator. Accordingly, the district court was correct in concluding that claims 7 and 10 would have been obvious under 35 U.S.C. § 103 in light of Demmitt and Bechtel.[4]
 
 B. Claim 20 of the '411 Patent
 
 13
 The district court also concluded that claim 20 of the '411 patent would have been obvious in light of the other prior art read in conjunction with Demmitt. Claim 20 of the '411 patent recites the same process as claim 1 of the '492 patent except that it begins with hydrazine already in the liquid and it specifies the use of a cation resin in series with an anion resin to remove carbon contaminants. As Demmitt discloses adding the hydrazine, starting with hydrazine already in the liquid is inherently taught by Demmitt. Claim 20 of the '411 patent, as opposed to claim 1 of the '492 patent, however, requires use of both cationic and anionic resins and can be read to require the removal of all dissolved carbon contaminants.
 
 
 14
 In a prior action, the broader '492 patent had been held not to be invalid for obviousness. Ecolochem, Inc. v. Mobil Water Tech. Co., 690 F.Supp. 778 (E.D.Ark.1988), aff'd, 871 F.2d 1096 (Fed.Cir.1989) (table) (hereinafter Mobil Water ). In the present case, the district court found that although prior art before the court in Mobile Water did not offer any suggestion to combine the Houghton process with ion resin filtration of contaminants, the Demmitt reference, not before the Arkansas district court, clearly did so. The court below then found that "Demmitt suggests that adding an ion exchange resin to the end of the Houghton process will remove impurities in the effluent."
 
 
 15
 The district court clearly mischaracterized the import of Demmitt as a prior art reference for the determination of obviousness of claim 20. Demmitt, though anticipating claims 1, 2, 5 and 6 of the '492 patent, did not disclose the removal of carbon contaminants with an ion exchange resin. The only real discussion of the resin is in connection with a formula showing how hydrazine, not dissolved carbon contaminants, can be removed from the liquid. The only "suggestion" made by Demmitt is that it would remove hydrazine, and not other "impurities in the effluent" as stated by the district court. Furthermore, the Akol'zin reference, which does disclose the Houghton process in combination with an ion exchange filter, was cited on the front page of the '411 patent and was thus before the patent examiner, as well as the court in Mobil Water. 690 F.Supp. at 782. This reference discloses a process for using hydrazine to deoxygenate a liquid and then filtering the liquid through two filters, "the first containing activated carbon and the second containing an ion exchanger AV-17." Like Demmitt, Akol'zin uses an ion exchange resin to filter the effluent. However, as with Demmitt, the reference "does not teach the use of a mixed bed resin to remove ionic impurities introduced by leaching from the activated carbon." Id. Demmitt teaches no more than Akol'zin and is, therefore, merely cumulative.
 
 
 16
 Despite the district court's mischaracterization of the importance of Demmitt, Ecolochem concedes that there is a "prima facie case of obviousness before Demmitt and there remains one after." However, Ecolochem argues that the secondary considerations, in this case, could rebut the prima facie case and that the district court wrongly failed to consider its evidence of secondary considerations and conclude that the evidence raised a genuine issue of fact requiring trial. We agree.
 
 
 17
 The district court asserted that "[s]econdary considerations carry little weight where a critical prior art reference has long been neglected," citing Graham v. John Deere Co., 383 U.S. 1, 36 (1966). Upon finding that Demmitt was such a critical prior art reference, the district court discounted any effect of the secondary considerations. Contrary to the actions of the district court in this case, however, the court in Graham fully evaluated the secondary consideration but found that in those circumstances, the secondary factors failed to "tip the scales of patentability." Id. It is not the law that secondary considerations carry little weight, just that prior art may affect the weight of the evidence of those considerations and vice versa. In addition, as discussed above, Demmitt, being merely cumulative, is not a "critical" but an uncited ("long neglected") reference. Hence, it adds nothing to the prior art before the patent examiner and the court in Mobile Water.
 
 
 18
 Ecolochem has put forth a large quantity of evidence of secondary considerations to show that the process of its invention was not obvious. Included was evidence: that there was a long-felt, unsolved need in the industry; that many tried but failed to find a solution; that various references taught away from the invention as they warned against the Houghton process because of the carbon contaminants; that customers have been satisfied with Ecolochem's process; that Ecolochem's invention has been widely discussed and favorably received; that Ecolochem's process has had a large impact on the industry; that others have tried to copy Ecolochem's process; and that Ecolochem has had great commercial success due to the patented invention. These are material facts for determining obviousness which, if found by the fact-finder in favor of Ecolochem, could have tipped the scales to validity as in the Mobile Water court.
 
 
 19
 The district court did not make any findings with respect to the credibility or weight of Ecolochem's evidence regarding secondary considerations, and it would have been improper to do so on summary judgment. Edison, on its part, has put forth evidence to refute Ecolochem's evidence regarding secondary considerations. Accordingly, there are genuine issues of material fact as to secondary considerations that can only be resolved at trial. Only then will the district court be in a position to assess the prior art in light of the secondary considerations to determine whether the prima facie case of obviousness has been overcome.
 
 V. Conclusion
 
 20
 For the foregoing reasons, the trial court's finding of anticipation of claims 1, 2, 5 and 6 of the '492 patent by Demmitt and its holding of obviousness of claims 7 and 10 of the '492 patent, in light of Demmitt, are affirmed, but the trial court's holding of obviousness of claim 20 of the '411 patent is reversed, and the case is remanded for trial on validity and infringement as to claim 20. The judgment of the U.S. District Court for the Central District of California regarding the invalidity of U.S. Patent Nos. 4,556,492 and 4,818,411 is thus affirmed-in-part, reversed-in-part, and remanded for further proceedings not inconsistent with this opinion.
 
 Costs
 
 21
 Each party to bear its own costs.
 
 
 22
 NEWMAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 23
 I write separately to explain why I do not share the view of the panel majority that the '492 patent is invalid.
 
 Anticipation
 
 24
 A finding of anticipation requires that the patented invention was previously known and is described in a single reference. However, my colleagues on this panel have not correctly perceived the technological substance of the Demmitt reference, on which they rely for anticipation. Demmitt reported a scientific study of the Houghton process, whereby he measured the amount of residual hydrazine by taking a sample of the aqueous stream, passing this sample through a cation exchange resin to remove materials that interfere with the measurement of hydrazine, and then measuring the hydrazine content of the sample. This is not the same as the Ecolochem deoxygenation process, wherein carbon catalyst-sourced impurities are removed, as a step in power plant and reactor water deoxygenation, by use of a mixed- or cation-exchange resin.
 
 
 25
 "Anticipation" means lack of novelty. The Houghton process had languished in disuse until Ecolochem solved the serious problem caused by the carbon-source impurities resulting from that process. Demmitt did not treat or solve that problem. Whatever the relation between Demmitt and the claimed invention, it is not "anticipation,"[1] for Demmitt does not disclose the claimed invention.
 
 
 26
 The Houghton process for removal of dissolved oxygen has long been known, but until Ecolochem's invention disclosed in the '492 patent, the utility of the Houghton process was limited because of the contaminants leached into the water from the carbon catalyst. The publications and other evidence of record show that this problem with the Houghton process was long-standing, and had impeded significant utilization of that process. The record shows that the Ecolochem invention was a widely recognized breakthrough in water purification processes. Demmitt's work twenty-three years earlier was unrelated to the removal of carbon-leached contaminants, as required by claim 1 of the '492 patent.
 
 
 27
 Nor can the dependent claims be anticipated by a reference that does not describe the added limitations in these claims. Indeed, the panel majority appears to recognize that claim 2 is not anticipated, but casually wipes out claim 2 with the statement that Ecolochem did not distinguish it. That is incorrect, for Ecolochem argued that "claim 2 requires the presence of a fourth filtration step to remove un dissolved activated carbon contaminants" (emphasis in original). That step is not even remotely shown, or inherently present, in Demmitt. On no interpretation can Demmitt be found to anticipate claim 2. The panel majority holds that because Ecolochem distinguished claim 2 in only one part of its appellate brief, while stating in another part of the brief that claim 1 presents the central issue, then claim 2 is deemed abandoned on appeal. Claim 2 was not abandoned. It was retained, appealed, and distinguished as appropriate to its subject matter.
 
 Obviousness
 
 28
 The panel majority holds that claims 7 and 10 of the '492 patent would have been obvious because the independent claims from which they depend are "anticipated" by Demmitt. Even if these claims were deemed to be anticipated--as they are not--this ground of "obviousness" is incorrect in law. 35 U.S.C. § 103 requires that obviousness be determined for the invention as a whole, in light of the prior art, not in light of other claims of the same patent. A patent's claims are not prior art against itself. Further, while Ecolochem did not appeal the district court's decision as to all of the claims, that is not an admission as to the non-appealed subject matter. The narrowing of issues on appeal is to be commended, not punished.
 
 
 29
 Obviousness is determined as of the time the invention was made. The record documents the extensive efforts of others, and the complex procedures that were used by others, to remove dissolved oxygen. Ecolochem cites an early estimate that corrosion-caused replacement and repair costs ranged from $50-100 million per year in the United States. J.H. Metcalf, Inhibition and Corrosion Control Practices for Boiler Waters, in Corrosion Inhibitors 196 (C.C.Nathan, ed.1973). The simple solution discovered by Ecolochem escaped all who came before, and was rapidly embraced and copied by those who came after.
 
 
 30
 The district court found that there was long-felt need, commercial success, and copying of the Ecolochem invention. Engineers directly involved in this field stated that the Ecolochem process had "unexpected" potential. The record shows the contemporaneous acclaim by persons and even industries that were concerned with the problem of large-scale deoxygenation of water. Indeed, the value of the Ecolochem invention transcended the power plant field; for example, a report praised the Ecolochem process as meeting the water deoxygenation needs of the pulp and paper industry.
 
 
 31
 It is in this practical milieu that the patent system exists, not the litigation-induced indulgence in hindsight. I can not agree with the panel majority that it would have been both known and obvious to engineers in this field to do what they did not do, to expect what they did not expect, in order to adapt the Houghton process to practical deoxygenation. Demmitt, Bechtel, and others rejected the Houghton process in face of the very problem that Ecolochem showed them how to solve. This is a classical example of misplaced judicial expertise, whereby a breakthrough that was lauded at the time and was accompanied by contemporaneous surprise at how it was accomplished, is now found by judges to have been obvious all along.
 
 
 32
 Statute and precedent require that obviousness be determined from the viewpoint of a person of ordinary skill at the time the invention was made. Insights to this determination are provided by the record in this case, which shows: (1) Demmitt's rejection of the Houghton process for use at Hanford; (2) competitors' work with a palladium catalyst in order to avoid the problem of impurities from the carbon catalyst; (3) the failure of Bechtel, an engineering giant in this field, and of others, to solve the problem solved by Ecolochem; and of course (4) California Edison's insistence on continuing to use the Ecolochem process. It is not irrelevant that one of California Edison's engineers stated that "[Ecolochem] saved our ass" and "made heroes out of [names]."
 
 
 33
 That Ecolochem's solution to the problem of deoxygenation of ambient water in power plants and reactors is retrospectively simple is not the test of the law. Although the panel majority recognizes the important role of objective considerations in its reversal of the summary judgment with respect to the '411 patent, these considerations are also applicable to the '492 patent. The panel majority states at n. 4 that the evidence of secondary considerations can not be considered, stating that the claims "fail to recite features employed by Ecolochem in its commercial embodiment." That is incorrect. The affidavits of commercial success and long-felt need relate to the claimed invention. They are powerful evidence in support of the conclusion that the invention was not obvious to a person of ordinary skill.
 
 
 34
 Thus I must, respectfully, dissent from the panel majority's decision and its analysis of fact and law concerning the '492 patent.
 
 Additional Concerns
 
 35
 I briefly state some additional concerns with the panel majority's discussion of the legal premises of its decision. The majority states that it is no longer necessary to weigh objective evidence such as commercial success along with the other Graham factors; but instead sets this evidence in opposition to the other Graham factors, instructing the district court "to assess the prior art in light of the secondary considerations." That is an incorrect methodology. All evidence must be considered and weighed together, giving each aspect the probative value and credibility that its substance warrants, in determining whether the presumption of validity has been overcome. The contemporaneous views of the engineers who use and understand the technology must be considered along with the prior art, for these views place the invention in the proper context for adjudication.
 
 
 36
 I do not endorse the rules of claim construction proposed by the majority, for example with respect to the word "comprising." A patentee is not required to place in the claims every detail or step of the total process. It is incorrect to state that Ecolochem's evidence of commercial success does not relate to the patented process but to "unclaimed features," for it is the patented process that is commercially successful. Further, the mixed resin of claim 1 is an anionic/cationic resin.
 
 
 
 [1]
 Claims 8 and 9 of the '492 patent and claim 21 of the '411 patent were also held anticipated, but these findings are not being appealed
 
 
 [2]
 The dissent asserts that "anticipation requires that the patented invention was previously known and is described in a single reference." Dissent at 1. The test for anticipation, however, is not a literal word for word comparison between the prior art and the commercial embodiment of the patentee's invention; the test is whether "each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1570, 7 USPQ2d 1057, 1064 (Fed.Cir.1988) (emphasis added); Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1554, 33 USPQ2d 1496, 1498 (Fed.Cir.1995) ("the claimed process, including each step thereof, must have been described or embodied, either expressly or inherently, in a single reference.") (Newman, J.) (emphasis added); Standard Havens Prods., Inc. v. Gecor Indus., Inc.,953 F.2d 1360, 1369, 21 USPQ2d 1321, 1328 (Fed.Cir.1991) ("An anticipation reference, however, need not duplicate word for word what is in the claims. Anticipation can occur when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference."). As previously discussed, the cation exchange resin disclosed by Demmitt would inherently remove cationic dissolved contaminants, and the claim, as written, requires no more than the removal of those cationic dissolved contaminants
 Although there is support in the '492 patent specification for a claim that would require the removal of all dissolved contaminants, including anionic contaminants, the applicant did not draft such a claim for the '492 patent. In fact, he did with claim 20 of the '411 patent. See discussion on obviousness infra. Although we construe limitations narrowly to save the validity of patents, we are precluded from rewriting the patent claim to include unclaimed limitations even where the specification contains adequate support thereof. See, e.g., Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 799 n. 6, 17 USPQ2d 1092, 1102 n. 6 (Fed.Cir.1990) ("Nothing in any precedent permits judicial redrafting of claims.").
 
 
 [3]
 The dissent states that Ecolochem distinguishes claim 2 from claim 1 of the '492 patent for purposes of anticipation by stating that " 'claim 2 requires the presence of a fourth filtration step to remove un dissolved active carbon contaminants.' " Dissent at 2 (emphasis in original). This statement was made in the background section of Ecolochem's brief for the purpose of listing the claims in suit. In the argument section of its brief, however, Ecolochem asserts that "[t]he anticipation issues center on the interpretation of claim 1 of the '492 patent" and does not distinguish claim 2 as being patentably distinct from claim 1
 
 
 [4]
 The dissent characterizes the majority opinion as holding claims 7 and 10 obvious because the "independent claims from which they depend are 'anticipated,' " thereby accusing the majority of using a patent's claims as "prior art against itself." Dissent at 3. This is inaccurate. Claims 7 and 10 are held obvious in light of Demmitt and Bechtel because they claim a recommended use of the process employed in Demmitt
 In addition, the dissent points out that the process commercially employed by Ecolochem to deoxygenate liquid in a power plant arguably fulfilled a long felt need, was a commercial success, and might not be obvious in light of Demmitt. Dissent at 3-4. However, as discussed supra, claims 7 and 10 of the '492 patent fail to recite features employed by Ecolochem in its commercial embodiment. Neither dependent claims 7 and 10, nor independent claims 1 and 8 upon which they respectively depend, require the use of both anionic and cationic resins to remove all dissolved carbon contaminants as employed in Ecolochem's commercial embodiment which forms the basis of Ecolochem's evidence of commercial success. Secondary considerations are only legally relevant where they relate to the patented process, not unclaimed features of a commercial embodiment. In re Vamco Machine and Tool, Inc., 752 F.2d 1564, 1577, 224 USPQ 617, 625 (Fed.Cir.1985) (court found "no 'secondary considerations' in [that] case having a bearing on the legal issue of the obviousness of the invention" where affidavits extolled the virtues of a commercial embodiment that was different from the claimed invention).
 Claims 7 and 10 of the '492 patent recite nothing more than the process taught in Demmitt plus a final step of circulating the deoxygenated water at the conditions of elevated temperature in a power generating apparatus. We agree with the dissent that the proper test for obviousness is not whether a judge sitting today would find the invention obvious. However, it is not "hindsight" to hold as we do that this invention would have been obvious at the time of the application to the ordinary artisan in light of the clear teachings of the prior art and the meaning of the claim as properly interpreted. The environment claimed in claims 7 and 10 is clearly suggested by Demmitt as well as the Bechtel reference. See text supra.
 
 
 [1]
 I do not say that anticipation requires "a literal word for word comparison," as the panel majority states. I do say that anticipation requires that the same invention be described in a single prior art reference. RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 1444, 221 USPQ 385, 388 (Fed.Cir.) ("Anticipation is established only when a single prior art reference discloses, expressly or under principles of inherency, each and every element of a claimed invention."), cert. dismissed sub nom. Hazeltine Corp. v. RCA Corp., 468 U.S. 1228 (1984). The Ecolochem claims require treatment of the entire reactor stream, including removing all of the carbon-source contaminants. Demmitt's purification of a small titer for analytical purposes does not meet that criterion, explicitly or inherently